UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
BRIAN OLSON and GEORGE RUIZ,            )
                      Plaintiffs,    )
      v.                                                        )
TESORO REFINING AND MARKETING   )
COMPANY,                                                 )
                      Defendant.    )
_____)

No. C06-1311RSL

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

This matter comes before the Court on "Plaintiffs' Motion for Class Certification" (Dkt. #13). Plaintiffs allege that defendant Tesoro Refining and Marketing Company ("Tesoro") violated Washington's Minimum Wage Act ("WMWA"), Revised Code of Washington Chapter 49.46 *et seq*., by permitting unpaid work to be performed at the start and end of the workday at Tesoro's Anacortes, Washington refinery. As a result, plaintiffs seek to represent more than 250 Tesoro maintenance and operations workers who were paid for work at the Anacortes refinery between September 12, 2003 and the present. The Court held a hearing on the motion on September 11, 2007 and heard oral argument from counsel for plaintiffs and defendant.

For the reasons set forth below, the Court finds that class certification is warranted in this case.

//

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION

## II. DISCUSSION

**A.   Factual Background.**

Tesoro operates a facility in Anacortes, Washington, where it employs approximately 350 people and refines crude oil from around the world into transportation fuels. See Response at 1. Plaintiffs allege that Tesoro permitted performance of unpaid work by two classes of employees at the facility: operations workers and maintenance workers. Plaintiffs allege that Tesoro permitted these workers to perform unpaid pre-shift work routines, including donning personal protective gear,[1] gathering equipment and tools, and traveling to their work sites. See Motion at 5-6. In addition, because maintenance workers perform a shift "change over" at the end of their workday, plaintiffs claim that Tesoro also permitted operations workers to perform unpaid post-shift work including doffing their personal protective gear, storing equipment, and traveling to the main gate. Motion at 7-8. Based on these allegations, plaintiffs seek certification of the following class:

> All maintenance and operations workers employed by Tesoro Refining and Marketing Company at the Tesoro refinery in Anacortes, Washington, who were paid for work any time between September 12, 2003, to the date the class is certified, excluding managerial employees.

See Dkt. #1 at ¶2.2.

**B.   Federal Rule of Civil Procedure 23(a) Requirements.**

A party seeking to certify a class must establish that the requirements of Fed. R. Civ. P. 23 are met. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997). A court must engage in a "rigorous analysis" to determine whether the requirements of Rule 23 are satisfied. Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982). Plaintiffs bear the burden of demonstrating that they have met each of the four requirements of Rule 23(a). Zinzer v.

---

[1] The gear at issue includes: fire resistant coveralls ("FRCs"), fire resistant jackets or parkas, metal toe shoes, hard hats, safety glasses, and gloves. See Motion at 4; Response at 3.

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION           -2-

Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).   However, the evidentiary showing need not be extensive.  Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).  All that is necessary is enough information for the court "to form a reasonable judgment on each requirement" because the court does not examine the merits of the case and must accept as true the substantive allegations of the representative plaintiffs' claim.  Id. at 901 and n.17.

The following prerequisites must be established under Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Each of the four prerequisites is considered, separately, below.

**1.     Numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Although the number of putative class members by itself is not dispositive, as a general matter, courts have found numerosity is satisfied when class size exceeds 40 members. See Slaven v. BP Am., Inc., 190 F.R.D. 649, (C.D. Cal. 2000) (citing Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  In its response, Tesoro concedes that "the putative class is comprised of 260 members[.]"  Response at 1 n.2.  Given the size of the class, and the fact that in this case joinder of all the class members and their claims in one proceeding would be expensive and time consuming, in the interest of judicial economy, the numerosity factor is satisfied.

**2.     Commonality.**

Under Rule 23(a)(2), there must be questions of law and/or fact common to the proposed class in order to justify certification.  Courts have described the showing required to meet the commonality requirement as "minimal" and "not high."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998); Mortimore v. FDIC, 197 F.R.D. 432, 436 (W.D. Wash. 2000).  In assessing commonality, "[t]he existence of shared legal issues with divergent factual predicates

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION            -3-

1  is sufficient, as is a common core of salient facts coupled with disparate legal remedies within
2  the class." Hanlon, 150 F.3d at 1019.  Additionally, "[t]he commonality test is qualitative rather
3  than quantitative – one significant issue common to the class may be sufficient to warrant
4  certification." Dukes v. Wal-Mart, Inc., 474 F.3d 1214, 1225 (9th Cir. 2007).

5       In their motion, plaintiffs list six representative legal issues they contend are common to
6  the class, including the issue of "[w]hether walk time and clothes changing time are 'hours
7  worked' under the WMWA." Motion at 18.  Tesoro asserts in response that this particular legal
8  issue does not satisfy Rule 23(a)(2)'s commonality requirement because "whether any individual
9  employee's walk time or clothes changing time is 'hours worked' requires an individualized
10 inquiry into the facts." Response at 26.  However, as plaintiffs correctly note in reply, and as
11 the Ninth Circuit has underscored in recent cases, a question of law common to all members of
12 the class is sufficient under Rule 23(a)(2)'s commonality requirement even if there are
13 "divergent factual predicates." See Reply at 4-5; Hanlon, 150 F.3d at 1019 ("The existence of
14 shared legal issues with divergent factual predicates is sufficient[.]").  In this case, plaintiffs
15 submitted evidence showing that Tesoro expressly advanced the legal position that "wage and
16 hour law does not require the company to pay for time spent in walking, riding or traveling to or
17 from the actual place where employees perform their principal place of work activities." See
18 Dkt. #14 (Shaver Decl.), Ex. 4 (Hanich Dep. Ex. 30).  In its motion, plaintiffs contest this legal
19 position and frame a legal argument asserting that the travel time in this case is compensable as
20 "work" under the WMWA. See Motion at 12-15 (quoting Anderson v. DSHS, 115 Wn. App.
21 452, 457 (2003)).   On a motion for class certification the Court does not evaluate the merits,
22 however, the Court finds here that whether or not clothes changing and travel time is
23 compensable in this case is a common threshold question because it must be affirmatively
24 decided in favor of any putative class member in order for an individual claim to succeed.
25 Accordingly, the commonality requirement is met.
26

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION      -4-

### 3. Typicality.

The typicality element[2] requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality. Dukes, 474 F.3d at 1232. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation omitted); see also Dukes, 474 F.3d at 1232 (quoting Hanon).

Here, the named plaintiffs' alleged injuries for unpaid time spent walking, changing clothes and/or change-over time appears to be "reasonably co-extensive with those of the absent class members." Hanlon, 150 F.3d at 1020. In support of their motion, plaintiffs submitted declarations from both Tesoro operations and maintenance workers stating that they were not paid for the same type of activities for which the named plaintiffs are seeking recovery. See Dkt. #17 (Brandelli Decl.) (maintenance) at ¶11; Dkt. #18 (Donley Decl.) (operations) at ¶11; Dkt. #19 (Scotte Decl.) (operations) at ¶11; Dkt. #20 (Kerr Decl.) (operations) at ¶12; Dkt. #21 (Van Notric Decl.) (maintenance) at ¶10.

In opposition, defendant contends that the typicality requirement is not satisfied because

---

[2] As the Ninth Circuit recently explained, "[a]lthough the commonality and typicality requirements of Rule 23(a) tend to merge, each factor serves a discrete purpose. Commonality examines the relationship of facts and legal issues common to class members, while typicality focuses on the relationship of facts and issues between the class and its representatives." Dukes, 474 F.3d at 1232 n.10 (internal quotation marks and citation omitted).

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION           -5-

the named plaintiffs are retired[3] and they worked in a limited subset of all of the job functions included in the class. See Response at 27. The fact that named plaintiffs are retired does not implicate the typicality requirement in this case because the named plaintiffs allegedly suffered the same injury as those of the putative class: namely they were not paid for work they contend is compensable under the WMWA. The fact that named plaintiffs do not represent all of the job functions also does not defeat certification under Rule 23(a)(3). In Dukes, the Ninth Circuit recently held, in the different context of a sexual discrimination case filed under Title VII of the 1964 Civil Rights Act, that under Rule 23(a)'s typicality requirement "the lack of a class representative for each management category does not undermine Plaintiffs' certification goal because all female employees faced the same discrimination." Dukes, 474 F.3d at 1232. It is the same here. Although the two named plaintiffs do not represent all the job functions in the operations and maintenance classifications, the named plaintiffs are claiming an injury that all of the putative class allegedly suffered. Therefore, the typicality requirement is satisfied here.

### 4. Adequate Representation.

One of the main goals of Rule 23 is to "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." Amchem, 521 U.S. at 621. Rule 23(a)(4) allows class certification only if "the representative parties will fairly and adequately protect the interests of the class." "[T]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem, 521 U.S. at 625. To make this determination, the court must ascertain "(1) that the proposed representative Plaintiffs do not have a conflict of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." Dukes, 474 F.3d at 1233.

---

[3] As discussed infra in Section II.B.4, the contention that a retired worker cannot properly represent a class including current employees is properly directed at Rule 23(a)(4)'s "adequacy of representation" requirement.

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION         -6-

1       Turning first to the representative plaintiffs, defendant contends that the named plaintiffs
2 do not share the same interests as the proposed class because the named plaintiffs are retired and
3 therefore "do not have the same interests that current employees have in retaining autonomy
4 over when and where to do various activities and the flexibility that is currently in the workday."
5 See Response at 28.  Although defendant submitted a declaration from a current Tesoro operator
6 stating that "operators like the flexibility to control their work schedules," as plaintiffs correctly
7 note in their reply, there is no evidence that the claims in this lawsuit would compel Tesoro to
8 remove flexibility from the work schedule.   See Reply at 8; Arseneau Decl. at ¶4.
9       Defendant also opposes certification under Rule 23(a)(4) because it contends that "the
10 majority of the hourly workers have decided not to become involved in the lawsuit."  Response
11 at 28 (citing Anderson Decl. at ¶21).  Other than the bare assertion by defendant's counsel that
12 the putative class does not want to "become involved in the lawsuit," defendant has not shown
13 that putative class members have divergent interests from the named plaintiffs.  See Dkt. #46
14 (Anderson Decl.) at ¶21 ("[I]t is my understanding that putative class members generally were
15 unwilling to speak to or assist party representatives for either the named plaintiffs or
16 defendant.").  It is reasonable that Tesoro employees would be reluctant to get involved with
17 litigation against their current employer.  In confronting defendant's suggestion that putative
18 class members are reluctant to get involved in this litigation, plaintiffs supplied declarations
19 from current putative class members showing that while there may be reluctance to take a
20 position against defendant, putative class members share the named plaintiffs' interest in
21 pursuing claims under the WMWA.  See Dkt. #52 (Thomas Decl.) at ¶¶7, 9; see also Dkt. #53
22 (Van Notric Decl.) at ¶9.  There may be other reasons why putative class members do not wish
23 to become actively involved in this litigation.  But, on the record before the Court, it would be
24 speculation to assume that this reluctance is the result of a conflict of interest with the named
25 plaintiffs and "'this circuit does not favor [t]he denial of class certification on the basis of
26 speculative conflicts.'"  Newton-Nations v. Rogers, 221 F.R.D. 509, 511 (D. Ariz. 2004)

(quoting <u>Cummings v. Connell</u>, 316 F.3d 886, 896 (9th Cir. 2003).  Accordingly, the Court finds that the named plaintiffs in this case have interests that are coextensive with those of the putative class.

The Court turns next to the issue of whether plaintiffs are represented by qualified and competent counsel.  "To see if the attorney representing the class is qualified, the Court will look to the professional qualifications, skills, experience and resources of the lawyers."  <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 650 (C.D. Cal. 1996).  In this case, defendant has not challenged plaintiffs' counsel's qualifications, and the Court finds that plaintiffs' counsel is qualified for purposes of Rule 23(a)(4) in this case, especially given their success in litigating the <u>Alvarez v. IBP</u> case to judgment.  See <u>Alvarez v. IBP</u>, 339 F.3d 894 (9th Cir. 2003), <u>aff'd</u>, 546 U.S. 21 (2005).

**C.    Federal Rule of Civil Procedure 23(b) Requirements.**

In addition to Rule 23(a)'s prerequisites, plaintiffs also have the burden of demonstrating that at least one of the requirements under Rule 23(b) is met.  See <u>Zinzer</u>, 253 F.3d at 1186.  In this case, plaintiff argues that certification is appropriate under Fed. R. Civ. P. 23(b)(3), which requires that:

> questions of law or fact common to the members of the class <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3) (emphasis added); Motion at 21.  The purpose of this rule is to identify those actions in which certification of a class "would achieve economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Fed. R. Civ. P. 23 Advisory Committee Notes (1966).

**1.    Predominance of Common Issues.**

In their motion, plaintiffs assert that "the predominating common questions include whether the walk time, clothes changing and change over time are hours worked under the

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION            -8-

WMWA, the use of representative and expert evidence,[4] and legal and factual issues pertinent to 'willfulness' double damages." Motion at 22. The Court has already determined that the issue of whether walk time, clothes changing and change over time are hours worked under the WMWA satisfies the commonality requirement of Fed. R. Civ. P. 23(a)(2). However, while "[t]here is considerable overlap between Rule 23(a)(2) and (b)(3)," commonality alone will not satisfy the predominance inquiry. 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 4:22 (4th ed. 2002) (hereinafter "Newberg on Class Actions"); see Hanlon, 150 F.3d at 1022. Instead, the predominance inquiry looks to the relationship between the common claims and individual issues. Hanlon, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id. (quoting 7A Charles Alan Wright, Arthur R. Miller, 7 Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).

Here, the Court finds that whether walk time, clothes changing and change over time are hours worked under the WMWA is an issue of central importance to the case common to all class members. This single common issue predominates because in any individual suit, a putative class member would have to prevail on this threshold issue to be successful. "[T]he predominance requirement is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale. A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Newberg on Class Actions, § 4:25. In opposition, defendant contends

---

[4] The Court rejects plaintiffs' argument that "the use of representative and expert evidence" supports Rule 23(b)(3)'s predominance requirement. If plaintiffs were not pursuing the claims on a class-wide basis, there would no need to use representative or expert evidence because individual plaintiffs could directly present evidence of their individual work activities they contend are compensable without having to resort to representative evidence through expert testimony.

that establishing liability and damages for any individual putative class member under the WMWA would "require examining the circumstances of every individual's employment at Tesoro on a daily basis in order to determine whether the time spent donning PPE [personal protective equipment], walking or driving within the refinery, or performing the changeover, constitutes uncompensated 'hours worked' that are not de minimis." Response at 17-18.

The use of representative evidence is a sound basis for determining liability in wage and hour cases. In Alvarez v. IBP for example, a case cited by defendant for the proposition that a de minimis inquiry will require an individualized examination of each putative class member's routine, the Ninth Circuit did not question the district court's reliance on "representative evidence . . . notwithstanding somewhat discrepant job-specific donning and doffing rates" to support an award for all plaintiffs. Alvarez, 339 F.3d at 901; see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) ("[W]e hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (emphasis added)); Reich v. S. New England Telecomms., Corp., 121 F.3d 58, 67-68 (2d Cir. 1997) (holding that the court was "untroubled by the quantum of representative evidence in th[e] case because the testimony covered each clearly defined category of worker; there was actual consistency among those workers' testimony, both within each category and overall[.]") (citing Anderson, 328 U.S. at 687-88).

In support of their motion, plaintiffs submitted a declaration from Dr. Kenneth Mericle,[5]

---

[5] In its response, defendant moves to strike the declarations of Drs. Mericle and Munson submitted by plaintiffs in support of their motion for class certification because "the methodology employed is inapplicable to the claims at issue." Response at 23 n.8 (citing Stillwell v. Smith & Nephew, Inc., 482 F.3d 1187 (9th Cir. 2007) (rejecting the district court's exclusion of testimony under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) and Fed. R. Evid. 702). Given the early stage of these proceedings, the Court denies defendant's cursory footnote-opposition to plaintiffs' experts. See Dukes, 474 F.3d at 1227 (quoting In re Visa Check/Mastermoney Antitrust Litig., 280 F.3d 124, 132 n.4 (2d Cir. 2001) ("A Daubert motion is typically not made until later stages in litigation . . . and a district court

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION         -10-

an expert who testified at trial in <u>Alvarez</u>, opining that in this case "[a] well designed and conducted study is likely to provide more accurate estimates of donning and walking times than by asking individual workers to estimate their own donning and walking times, especially if the workers have not attempted to systematically time themselves." Dkt. #16 (Mericle Decl.) at ¶10. Based on this unrebutted expert testimony, the Court finds that the issue of whether or not the various walk time, clothes changing, and change over time at the Tesoro facility constitutes hours worked under the WMWA predominates the individualized questions regarding the putative class members' individual work routines because these activities can be aggregated into representative evidence through expert analysis. This method of adjudicating whether the claimed activities constitute "hours worked" on a class basis as opposed to making the determination on a case-by-case basis also advances the interest of judicial economy. <u>See</u> <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help judicial economy.").

In closing, however, the Court emphasizes that the predominance requirement in this case is the closest and most difficult certification issue to decide. Accordingly, as the case progresses, should it appear to the Court that issues regarding individual plaintiffs' work routines and whether or not individual activities are <u>de minimis</u> becomes the overriding focus of the litigation, the Court will revisit this certification order. <u>See</u> <u>Dukes</u>, 474 F.3d at 1223-24

---

should not postpone consideration of a motion for class certification for the sake of waiting until a <u>Daubert</u> examination is appropriate."). Furthermore, defendants purport to strike Dr. Mericle's declaration based on "electronic gate swipe data," which defendant contends is "irrelevant and does nothing to establish the start of the paid workday." Response at 23. Dr. Mericle, however, does not rely on the existence of "electronic gate swipe data" itself for the opinion in paragraph 10 of his declaration. Dr. Mericle's declaration appears to reference the turnstiles at the card reader only as the starting point for measuring the distance employees must travel to begin their paid workday. <u>See</u> Dkt. #16. Dr. Mericle does not suggest in his declaration that "electronic gate swipe data" is evidence of the start of the paid workday.

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION           -11-

("Rule 23 provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court. If later evidence disproves Plaintiffs' contentions that common issues predominate, the district court can at that stage modify or decertify the class, or use a variety of management devices." (internal citations and quotation marks omitted)).

### 2. Superiority of the class mechanism.

Finally, plaintiffs must show that certifying this case as a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." For this inquiry, the Court turns to the four factors set forth in Rule 23(b)(3):

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. Civ. P. 23(b)(3). Before turning to this issue, however, the Court addresses defendant's contention under the superiority rubric that the Court should refuse to certify a class under Rule 23(b)(3) because "[p]laintiffs have not submitted a trial plan setting out how the Court would deal with the individual issues inherent in the claims of operations and maintenance workers performing distinct job functions." See Response at 24. In Chamberlan v. Ford Motor Co., 402 F.3d 952, 961 n.4 (9th Cir. 2005) (per curium), the Ninth Circuit "decline[d] Ford's "suggestion that the district court's failure to adopt a trial plan or to articulate how the class action would be tried was an abuse of discretion . . . [since] [n]othing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule." Similarly, the Court rejects defendant's contention here that a trial plan is required for class certification. As discussed above in Section II.C.1, the Court has determined that representative evidence is appropriate to address the individualized issues concerning varying work tasks.

Returning to the 24(b)(3) factors, first, in examining the interest of members of the class

ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION           -12-

in individually controlling the prosecution their own action, the Court considers defendant's assertion that $10,000 is a conservative damages estimate for an individual putative class member employed throughout the class period. See Response at 24. The Court finds that putative class members will likely be more interested in pursing this matter as a class, rather than individually, because even $10,000 will likely not be high enough to warrant individual filings given the complexity of the legal issues in this case, particularly where the litigation is against a current employer.

Under the second factor, the Court is not aware of "any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3). The Court finds that absence of other litigation is not significant in the superiority analysis here because it may indicate either that a class action is not needed because there is no concern about a waste of judicial resources caused by duplicative individual suits, or that a class action is needed because the amount at issue for an individual plaintiff is not significant enough to warrant an individual filing. See also Newberg on Class Actions, § 4:30 (stating that "not every factor . . . is expected to be of significance in this superiority determination."). Regarding the third factor, the Western District of Washington is an appropriate forum because it is where the events at issue at the Anacortes, Washington facility occurred and because the Court is not aware of any other class action litigation concerning the claims in this case. See id. at § 4:31 ("In the class action context, the desirability of concentrating claims in a particular forum is relevant only when other class litigation has already been commenced elsewhere."). Finally, regarding the difficulties in class management, as discussed in Section II.C.1 above, the use of representative evidence in this case will ease the Court's management concerns. However, as the Court highlighted under the predominance inquiry, as the case progresses, if individual questions become the overriding issues in the case, the Court retains the authority to decertify the class. See id. at § 4:32 ("When a court determines that common questions do not predominate over individual ones . . . the court is highly likely to find that a class action is also

1 | not superior because of the management difficulties posed by the individual questions.").

**D.   Conclusions Regarding Class Certification.**

Having considered defendant's objections to class certification both in its response and at the certification hearing, and plaintiffs' arguments in support of certification, the Court finds that plaintiffs have met the class certification prerequisites of Fed. R. Civ. P. 23(a) and shown that the proposed class may be maintained pursuant to Fed. R. Civ. P. 23(b)(3). Accordingly, the Court certifies the following class:

> All maintenance and operations workers employed by Tesoro Refining and Marketing Company at the Tesoro refinery in Anacortes, Washington, who were paid for work any time between September 12, 2003, to the date the class is certified, excluding managerial employees.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS "Plaintiffs' Motion for Class Certification" (Dkt. #13) and certifies the class as set forth in this order.

DATED this 12th day of September, 2007.

*[signature]*

Robert S. Lasnik
United States District Judge